## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA, and,

THE STATE OF WEST VIRGINIA,
by and through the
WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION

     *Plaintiffs*,

     v.

WACO OIL & GAS CO., INC.,

     *Defendant*.

ELECTRONICALLY
FILED
Sep 28 2023
U.S. DISTRICT COURT
Northern District of WV

Civil Action No. **1:23-CV-78 (Kleeh)**

## COMPLAINT

     Plaintiff the United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and Plaintiff the State of West Virginia ("the State"), by and through the West Virginia Department of Environmental Protection ("WVDEP"), file this Complaint and allege as follows:

### NATURE OF ACTION

     1.     This is a civil action against Waco Oil & Gas Company, Inc. ("Waco" or "Defendant") pursuant to Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), and Section 22 of the West Virginia Water Pollution Control Act ("WPCA"), W. Va. Code § 22-11-22. Plaintiffs allege that Defendant discharged and will continue to discharge pollutants into waters of the United States and of the State in violation of Section 301 of the CWA, 33 U.S.C. § 1311, and Section 8 of the WPCA, W. Va. Code § 22-11-8.

Specifically, Defendant has discharged pollutants, including dredged and/or fill material, into waters of the United States and waters of the State at a 392-acre site located on Route 19 approximately 1.25 miles southeast from the intersection of Route 19 and I-79 in Sutton, Braxton County, West Virginia ("the Site"), in violation of the CWA and WPCA.

2.      In this action, Plaintiffs seek: (1) to enjoin the unauthorized discharge of pollutants to waters of the United States and the waters of the State of West Virginia from point sources at or from the Site; (2) to require Defendant to comply with the requirements of the CWA, the WPCA, and their implementing regulations; (3) to require Defendant, at its own expense and at the direction of EPA and WVDEP, to restore and/or mitigate the impacts caused by the alleged unlawful activities; and (4) to require Defendant to pay civil penalties as provided in 33 U.S.C. § 1319(d) and W. Va. Code § 22-11-22.

### JURISDICTION, VENUE, NOTICE, AND AUTHORITY

3.      This Court has jurisdiction over the subject matter of this action and these parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309 of the CWA, 33 U.S.C. § 1319(b).

4.      This Court has supplemental jurisdiction over the State's claim in this action pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims as to form part of the same case or controversy.

5.      Venue is appropriate in the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because Defendant conducts business in this District, the subject Site is located in this District, and the violations that constitute the basis of this Complaint occurred in this District.

6.      Pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), notice of the commencement of this action has been provided to the State, which joins this action as a co-plaintiff.

7.      The United States has authority to bring this action on behalf of the EPA Administrator under 28 U.S.C. §§ 516 and 519, and Section 506 of the CWA, 33 U.S.C. § 1366.

8.      WVDEP has authority to bring this action pursuant to W. Va. Code § 22-11-22.

**DEFENDANT**

9.      Waco is a domestic C corporation incorporated in the State of West Virginia in 1975 with a principal business address of 1595 U.S. Highway 33 E., Glenville, West Virginia 26351.

10.      Waco owns and/or operates the Site located on West Virginia Route 19, approximately 1.25 east of I-79, that includes, but is not limited to, the property with Tax Parcel ID 04-06-008Q-0009-0000 located at the following coordinates: 38.6087 N, 80.7368 W.

11.      Waco is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and Section 3(14) of the WPCA, W. Va. Code § 22-11-3(14).

12.      At all times relevant to this Complaint, Waco either owned or otherwise controlled and operated the Site and controlled or directed the activities relevant to this Complaint that occurred at the Site.

**STATUTORY AND REGULATORY BACKGROUND**

**A.  Clean Water Act General Provisions**

13.      The objective of the Clean Water Act is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

14.     CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant" by any person to navigable waters unless that discharge is authorized by a permit issued under CWA Section 404, 33 U.S.C. § 1344, or by other provisions of the CWA not applicable here.

15.     Section 404(a) of the CWA, 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, U.S. Army Corps of Engineers, to issue permits for the discharge of dredged and/or fill material to navigable waters at specified disposal sites.

16.     "Discharge of a pollutant" means, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

17.     "Pollutant" means, among other things, dredged spoil, rock, and/or sand. 33 U.S.C. § 1362(6).

18.     "Fill material" is defined as any pollutant which replaces portions of the waters or the United States with dry land or which changes the bottom elevation of a water body for any purpose. 40 C.F.R. § 232.2.

19.     "Navigable waters" means "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

20.     "Point source" means, among other things, "any discernable, confined and discrete conveyance . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

21.     For the purposes of the CWA, "person" means "an individual, corporation, partnership, [or] association." 33 U.S.C. § 1362(5).

**B.  Clean Water Act Enforcement Provisions**

22.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the EPA Administrator to commence a civil action for appropriate relief, including a permanent or

temporary injunction as well as civil penalties, against any person who violates Section 301 of the CWA, 33 U.S.C. § 1311.

23. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), subjects any person who violates CWA Section 301, 33 U.S.C. § 1311, to civil penalties.

24. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), establishes civil penalties for violations of the CWA payable to the United States of up to $25,000 per day for each violation. Section 309(d) of the CWA further specifies that in determining the amount of a civil penalty, a court "shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require." 33 U.S.C. § 1319(d).

25. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (Pub. L. No. 101-410), as amended by the Debt Collection Improvement Act of 1996 (Pub. L. No. 104-134, Sec. 31001(s)), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note), as reflected in the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, EPA may seek civil penalties of up to $64,618 per day per violation of the CWA for violations occurring after November 2, 2015, where penalties are assessed on or after January 6, 2023.

**C. Water Pollution Control Act Enforcement Provisions**

26. Section 22 of the WPCA, W. Va. Code § 22-11-22, authorizes WVDEP to commence a civil action for injunctive relief to compel compliance with and to enjoin violations of any provision of the WPCA or any term or condition of a National Pollutant Discharge Elimination System ("NPDES") permit issued under the WPCA. Section 22 of the WPCA also

provides that any person who violates any provision of an NPDES permit issued pursuant to Section 8 of the WPCA, W. Va. Code § 22-11-8, is subject to a civil penalty of up to $25,000 per day for each violation.

## GENERAL ALLEGATIONS

27.     The real property that is the subject of this Complaint comprises Tax Parcel ID 04-06-008Q-0009-0000, as identified by the Braxton County, West Virginia, Assessor's Office.

28.     The Site is an approximately 392-acre plot of land located adjacent to Route 19 approximately 1.25 miles southeast from the intersection of Route 19 and I-79 in Sutton, Braxton County, West Virginia. The Site and the areas impacted within it are identified in Exhibit A to this Complaint.

29.     The southern portion of the Site includes a flat pad (denominated "Pad 1") adjacent to Route 19 that is set against a steep slope that climbs approximately 950 feet to a northern area that, after the unauthorized discharges alleged in this Complaint, Waco made into a second flat pad (denominated "Pad 2").

30.     Waco has owned the Site since 1998. Prior to the violations alleged in this Complaint, Waco had leased part of the Site for the construction of a cell tower and then for use as a storage site for pipes and equipment.

31.     WVDEP first became aware of Waco's land-clearing and earthmoving activities at the Site on or about January 23, 2017.

32.     WVDEP notified EPA of Waco's land-clearing and earthmoving activities at the Site on or about January 13, 2020.

33.     At all times relevant to this Complaint, the Site was owned, controlled, and/or operated by Waco.

A. <u>**Aquatic Features Associated with the Site**</u>

34.     Aquatic features at the Site include relatively permanent tributaries identified as Bear Run and Cunningham Fork, unnamed relatively permanent tributaries to Bear Run and Cunningham Fork, as well as two wetlands abutting, and with a continuous surface connection to, a relatively permanent tributary to Bear Run.

a. *Bear Run*

35.     Bear Run is a tributary located in the southeastern portion of the Site. It is included on maps prepared by the United States Geological Survey ("USGS") and the West Virginia State Addressing and Mapping Board ("SAMB").

36.     The headwaters of Bear Run, an ecologically important resource, originate within the Site.

37.     Bear Run is a non-navigable, relatively permanent headwater tributary of Elk River, a traditional navigable water.

38.     From the Site, Bear Run flows approximately 19.5 miles to Elk River.

i. *Feature A*

39.     Feature A is an unnamed tributary of Bear Run located under and near Pad 1.

40.     Feature A is distinct on USGS topographic maps based on a V-shaped pattern in the mapped contour lines.

41.     On February 26, 2020, an EPA inspector observed Feature A to have an Ordinary High-Water Mark, bed and banks, and flow adequate to support aquatic macroinvertebrates downstream of Pad 1.

42.     Feature A is a non-navigable, relatively permanent tributary of Elk River, a traditional navigable water, via Bear Run.

**ii.  *Feature A1***

43.     Feature A1 is an unnamed tributary of Feature A and, in turn, Bear Run.

44.     Feature A1 is observable in some historical leaf-off aerial imagery of the Site.

45.     Feature A1 is distinct in pre-disturbance elevation data displayed as a hillshade raster (a grayscale representation of the terrain surface using elevation data that indicates topographic expression including the discrete, lower channel signatures indicative of streams).

46.     Feature A1 previously converged with Feature A in the area now occupied by Pad 1.

47.     Prior to Waco's operations at the Site, Feature A1 was a relatively permanent tributary of Elk River, a traditional navigable water, via Feature A and Bear Run.

**iii.  *Wetland Area 1***

48.     Wetland Area 1 is a wetland that abuts and has a continuous surface connection with Feature A, a relatively permanent tributary of a traditional navigable water.

49.     Wetland Area 1 is distinct in aerial imagery of the Site from as early as 2007.

50.     Wetland Area 1 has a continuous, permanent surface connection with Feature A, a relatively permanent tributary of Elk River, a traditional navigable water, via Bear Run.

**iv.  *Feature C1***

51.     Feature C1 is an unnamed, headwater tributary of Bear Run located near Pad 2.

52.     Before flowing into Bear Run, Feature C1 converges with Feature C.

53.     Feature C is a tributary of Bear Run that is included in SAMB data.

54.     On February 26, 2020, an EPA inspector observed Feature C to have well-developed physical stream features, such as an Ordinary High-Water Mark and a defined bed and banks; to support perennial flow; and to provide habitat that supported aquatic life.

55.     Feature C1 is a relatively permanent tributary of Elk River, a traditional navigable water, via Feature C and Bear Run.

### v.  *Feature C2*

56.     Feature C2 is an unnamed, headwater tributary of Bear Run located near Pad 2.

57.     Feature C2 is distinct in pre-disturbance elevation data displayed as a hillshade raster.

58.     Before flowing into Bear Run, Feature C2 converges with Feature C1 to form Feature C.

59.     Above the convergence of Feature C2 with Feature C1, Feature C2 is a relatively permanent tributary of Elk River, a traditional navigable water, via Feature C1 and Bear Run.

### vi.  *Feature C3*

60.     Feature C3 is an unnamed tributary of Bear Run located near Pad 2.

61.     Before flowing into Bear Run, Feature C3 converges with Feature C.

62.     Feature C3 is a relatively permanent tributary of Elk River, a traditional navigable water, via Feature C3 and Bear Run.

### b.  *Cunningham Fork*

63.     Cunningham Fork is a relatively permanent tributary located northwest of the Site that runs parallel to I-79. It is included on maps prepared by the USGS and the SAMB.

64.     Cunningham Fork is a headwater tributary of Buffalo Creek, which flows from the Site approximately 4.48 miles to Elk River. Buffalo Creek is a relatively permanent tributary of Elk River.

65.     Cunningham Fork is a relatively permanent tributary of Elk River, a traditional navigable water, via Buffalo Creek.

### i.   *Feature G*

66.     Feature G is an unnamed tributary of Cunningham Fork located north of Pad 2.

67.     Feature G is distinct in elevation data including on USGS topographic maps based on a V-shaped pattern in the mapped contour lines and the pre-disturbance hillshade raster.

68.     Feature G is a relatively permanent tributary of Elk River, a traditional navigable water, via Cunningham Fork.

### ii.   *Feature H*

69.     Feature H is an unnamed tributary of Cunningham Fork located north of Pad 2.

70.     Feature H is included on maps prepared by the SAMB.

71.     Feature H is distinct in pre-disturbance elevation data displayed as a hillshade raster.

72.     Feature H is a relatively permanent tributary of Elk River, a traditional navigable water, via Cunningham Fork.

### B.   Unauthorized Discharges of Pollutants at the Site

73.     From at least September 2016 to the present, Waco and/or persons acting on behalf of or at the direction of Waco conducted earthmoving activities on approximately 60 acres of the Site including, but not limited to, land-clearing, grubbing, grading, excavation, and soil stripping and stockpiling using earthmoving vehicles and other equipment.

74.     The activities resulted in the unauthorized discharges of "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6), including dredged and/or fill material, into approximately 2,442 linear feet of streams with relatively permanent flow and 0.19 acres of wetlands adjacent to and with a continuous surface connection to those streams. The impacted aquatic resources are denominated Features A, A1, C1, C2, C3, G, H, and Wetland Area 1, as depicted on Exhibit A attached to this Complaint and as described in further detail above.

75.     Waco and/or persons acting on behalf of or at the direction of Waco used mechanized land-clearing and earthmoving equipment, including graders, excavators, loaders, and backhoes, to accomplish the discharges described in Paragraphs 74 and 78 to 96.

76.     Waco did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers, U.S. Army Corps of Engineers, for the discharge of fill material into waters of the United States as required by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344.

77.     Waco conducted, supervised and/or otherwise controlled the unauthorized discharges described in Paragraphs 74 and 78 to 96.

      **a.   *Impacts to Feature A***

78.     Based on aerial imagery, Waco initiated construction, earthmoving, and re-grading activities at Pad 1 around 2018. These activities at the Site filled approximately 1,600 linear feet of Feature A that had relatively permanent flow.

79.     Additionally, Waco may have relocated a portion of Feature A to a ditch constructed along the northern edge of Pad 1.

### b. *Impacts to Feature A1*

80.     Based on aerial imagery, Waco initiated construction, earthmoving, and re-grading activities at Pad 1 around 2018. These activities filled and relocated approximately 299 linear feet of Feature A1 that had relatively permanent flow.

81.     Waco also placed large rocks in parts of Feature A1 to stabilize a channel diverting a portion of its flow.

### c. *Impacts to Wetland Area 1*

82.     Based on aerial imagery, Waco initiated construction, earthmoving, and re-grading activities at Pad 1 around 2018. These activities at the Site discharged fill material to Wetland Area 1, impacting approximately 0.19 acres of wetland.

### d. *Impacts to Feature C1*

83.     Based on aerial imagery, Waco initiated construction, earthmoving, and re-grading activities at Pad 2 around 2016. These activities at the Site filled approximately ten linear feet of Feature C1 that had relatively permanent flow.

84.     Aerial imagery indicates that Waco continued to conduct additional earthmoving activity and development at Pad 2 in 2018 that discharged additional dredged and/or fill material into Feature C1.

### e. *Impacts to Feature C2*

85.     Based on aerial imagery, Waco initiated construction, earthmoving, and re-grading activities at Pad 2 around 2016. These activities filled approximately 80 linear feet of Feature C2 that had relatively permanent flow.

86.     Aerial imagery indicates that Waco continued to conduct additional earthmoving activity and development at Pad 2 in 2018 that discharged additional dredged and/or fill material into Feature C2.

87.     Following Waco's earthmoving activity, in December 2021, WVDEP notified EPA that a slip/landslide had occurred near the access road at Pad 2. Based upon a physical inspection and aerial imagery, WVDEP determined that there was mass land movement in the area of the previously buried headwaters of Feature C2.

88.     On May 9, 2022, an EPA inspector observed that unstabilized material buried a section of Feature C2, and that material from the landslide caused sediment-laden water in Feature C2.

89.     On October 5, 2022, Civil & Environmental Consultants, Inc., a contractor hired by Waco, notified EPA that discharges from the December 2021 landslide impacted an additional approximately 143 linear feet of Feature C2.

90.     Waco's earthmoving activity caused the unstable slopes that resulted in the slips/landslides described in Paragraphs 87 to 89, and the resulting impacts to aquatic resources.

        **f.  *Impacts to Feature C3***

91.     Based on aerial imagery, Waco initiated construction, earthmoving, and re-grading activities at Pad 2 around 2016. These activities filled approximately 50 feet of Feature C3 that had relatively permanent flow.

92.     Aerial imagery indicates that Waco continued to conduct additional earthmoving activity and development at Pad 2 in 2018.

### h.   *Impacts to Feature G*

93.     Based on aerial imagery, Waco initiated construction, land-clearing, and earthmoving activities at Pad 2 around 2016. These activities filled approximately 70 linear feet of Feature G that had relatively permanent flow. Aerial imagery indicates that Waco continued to conduct additional earthmoving activity and development at Pad 2 in 2018.

### i.   *Impacts to Feature H*

94.     Based on aerial imagery, Waco initiated construction, land-clearing, and earthmoving activities at Pad 2 around 2016. These activities filled less than 10 linear feet of Feature H that had relatively permanent flow.

95.     Aerial imagery indicates that Waco continued to conduct additional earthmoving activity and development at Pad 2 in 2018.

96.     In December 2021, WVDEP notified EPA that Waco had constructed a sediment pond in the stream channel of Feature H, during which Waco discharged fill material into additional areas of Feature H. Constructing the sediment pond increased the total Feature H impact to 190 linear feet.

## FIRST CLAIM FOR RELIEF

### 2016 Federal Clean Water Act Section 301 and 404 Violations

97.     Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 96 as if fully set forth within.

98.     Through the activities described above, Defendant and/or persons acting on its behalf discharged dredged and/or fill material to waters of the United States in 2016.

99.     The dredged and/or fill material that Defendant discharged includes, among other things, dirt, rock, and sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

100.     Defendant and/or persons acting on its behalf used mechanized land-clearing and earthmoving equipment to discharge pollutants at the Site in 2016. This equipment constitutes "point source[s]" as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

101.     The discharges of dredged and/or fill material described above constitute discharges of a pollutant within the meaning of CWA Sections 301 and 502(12), 33 U.S.C. §§ 1311 and 1362(12).

102.     Defendant did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers, for the discharges of dredged and/or fill material into waters of the United States at the Site, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

103.     Defendant has violated and continues to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by its unauthorized discharges of pollutants, specifically dredged and/or fill material, to waters of the United States at the Site.

104.     The above-described unauthorized discharges of pollutants to waters of the United States constitute multiple violations at the Site, and each day that such material remains in place constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

105.     Unless enjoined, Waco's violations will continue.

106.     Due to Defendant's 2016 discharges of dredged/and or fill material to waters of the United States without a permit, Defendant is liable to the United States for injunctive relief and civil penalties.

## SECOND CLAIM FOR RELIEF

### 2018 Federal Clean Water Act Section 301 and 404 Violations

107.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 106 as if fully set forth within.

108.    Through the activities described above, Defendant and/or persons acting on its behalf discharged dredged and/or fill material to waters of the United States in 2018.

109.    The dredged and/or fill material that Defendant discharged includes, among other things, dirt, rock, and sand, all of which constitute "pollutants" as defined in CWA Section 502(6), 33 U.S.C. § 1362(6).

110.    Defendant and/or persons acting on its behalf used mechanized land-clearing and earthmoving equipment to discharge pollutants at the Site in 2018. This equipment constitutes "point source[s]" as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

111.    The discharges of dredged and/or fill material described above constitute discharges of a pollutant within the meaning of CWA Sections 301 and 502(12), 33 U.S.C. §§ 1311 and 1362(12).

112.    Defendant did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers, for the discharges of dredged and/or fill material into waters of the United States at the Site, as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

113.    Defendant has violated and continues to violate CWA Section 301(a), 33 U.S.C. § 1311(a), by its unauthorized discharges of pollutants, specifically dredged and/or fill material, to the waters of the United States at the Site.

114.    The above-described unauthorized discharges of pollutants to waters of the United States constitute multiple violations at the Site, and each day that such material remains in place constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

115.    Unless enjoined, Waco's violations will continue.

116.    Due to Defendant's 2018 discharges of dredged and/or fill material to waters of the United States without a permit, Defendant is liable to the United States for injunctive relief and civil penalties.

### THIRD CLAIM FOR RELIEF

### West Virginia Water Pollution Control Act Violations

117.    Plaintiffs reallege and incorporate by reference the allegations set forth in Paragraphs 1 through 116 as if fully set forth within.

118.    Through the activities described above, Defendant and/or persons acting on its behalf discharged dredged and/or fill material to waters of the State of West Virginia.

119.    The dredged and/or fill material that Defendant discharged includes, among other things, dirt, rock, and sand, all of which constitute "pollutants" within the meaning of W. Va. Code § 22-11-3(16).

120.    The discharges of dredged and/or fill material described above constitute discharges of a pollutant as contemplated by W. Va. Code § 22-11-3(15).

121.    Defendant and/or persons acting on its behalf used mechanized land-clearing and earthmoving equipment that resulted in discharges at the Site. This equipment constitutes "point source[s]" within the meaning of W. Va. Code § 22-11-3(15).

122.    Defendant failed to maintain proper permits for discharges of dredged and/or fill materials into the waters of the State of West Virginia, as required by W. Va. Code § 22-11-8.

123.   Defendant has violated and continues to violate W. Va. Code § 22-11-16 through its noncompliance with WVDEP Order No. 8685.

124.   The above-described unauthorized discharges of pollutants into the waters of the State of West Virginia constitute multiple violations at the Site, and each day that such material remains in place constitutes a separate violation of W. Va. Code § 22-11-22, which authorizes WVDEP to commence a civil action for injunctive relief and subjects the Defendant to a civil penalty of up to $25,000 per day.

125.   Unless enjoined, Waco's violations will continue.

126.   Due to the Defendant's continual discharges of dredged and/or fill material into the waters of the State of West Virginia without a proper permit, Defendant is liable to the State of West Virginia for injunctive relief and civil penalties.

**PRAYER FOR RELIEF**

1.   Order Defendant to comply with the CWA and WPCA, their implementing regulations, and the terms of any permit issued thereunder;

2.   Permanently enjoin Defendant from discharging or causing the discharge of dredged and/or fill material or other pollutants to any waters of the United States or waters of the State, except in compliance with a permit or permits issued pursuant to the CWA and WPCA;

3.   Order Defendant to undertake measures, at Defendant's own expense and at the direction of EPA and/or the United States Army Corps of Engineers, in cooperation with WVDEP, to effect complete restoration of the waters of the United States and the waters of the State, at the Site and/or to conduct on-site and/or off-site mitigation for unauthorized impacts to waters of the United States, and the waters of the State, as appropriate;

4.      Order Defendant to pay civil penalties, pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), for each day of each violation of CWA Section 301(a);

5.      Order Defendant to pay civil penalties, pursuant to WPCA, W. Va. Code § 22-11-22, for each day of each violation of WPCA Section 8, W. Va. Code § 22-11-8;

6.      Award Plaintiffs their costs of this action; and

7.      Grant such other relief as the Court deems just and proper.

Dated: 9/28/2023

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

*/s/ Sarah A. Buckley*
SARAH A. BUCKLEY
ALBERT LIN
Trial Attorneys
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-7554 (Buckley)
(202) 514-2741 (Lin)
sarah.buckley@usdoj.gov
albert.lin@usdoj.gov
*Applications for admission*
*pro hac vice to be filed*

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

*/s/ Maximillian F. Nogay*
MAXIMILLIAN F. NOGAY
Assistant United States Attorney
W. Va. Bar # 13445
United States Attorney's Office
P.O. Box 591
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
(304) 234-0100 (office)
(304) 234-0110 (facsimile)
Max.Nogay@usdoj.gov

OF COUNSEL:

AVIVA H. REINFELD
Assistant Regional Counsel
United States Environmental Protection Agency
Region III

Four Penn Center
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103

                              FOR THE STATE OF WEST VIRGINIA

                              */s/ Brooke Hirst*
                              BROOKE HIRST
                              WV Bar ID No. 13892
                              Attorney, Office of Legal Services
                              WV Department of Environmental Protection
                              601 57th Street Southeast
                              Charleston, WV 25304
                              brooke.hirst@wv.gov